UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE MAZER, | : |
|           Plaintiff, | : |
| | : |
|           v. | : Civil Action No.: 11-cv-6816 |
| | : |
| LYNNE GOLD-BIKIN; | : |
| CHRISTOPHER BEDALI; | : |
| WEBER, GALLAGHER, SIMPSON, STAPLETON, | : |
| FIRES & NEWBY, LLP; | : |
| INTERSTATE CREDIT & COLLECTION; | : |
| JOHN DOES 1-10, | : Jury Trial of Twelve (12) Jurors |
|           Defendants. | : Demanded |

**FIRST AMENDED COMPLAINT**

**I.**    **Preliminary Statement**

1.    This is an action in, *inter alia*, legal malpractice secondary to attorney Defendants' representations of Plaintiff in Plaintiff's divorce and custody proceedings arising from those defendants causing plaintiff the partial loss of custody of her children and deficient equitable distribution. Thereafter, Defendant ICC sought on behalf of lawyer defendants to collect legal fees and costs against plaintiff by falsely advising plaintiff that her legal malpractice statute of limitations had expired in violation of the FDCPA.

2.    Individually, jointly or severally, Defendants are liable to Plaintiff for, but not limited to, the below causes of action and aforesaid remedies, for the reasons stated, which reasons are averred upon information and belief, or will become known in discovery or at trial.

3.    Plaintiff reserves the right to rely on the "discovery rule" and the doctrine(s) of equitable tolling/fraudulent concealment, respectively.

**II.     Jurisdiction and Venue**

4.      Jurisdiction in this Honorable Court is based on federal question and diversity conferred by 28 U.S.C. §§ 1331, respectively; supplemental jurisdiction over state law claims is granted by 28 U.S.C. § 1367.

5.      Venue lies in this district in that the events giving rise to these claims occurred here, at least one (1) Defendant resides, maintains a principal place of business, is incorporated or does business here, or the subject of this incident is situated within this district.

**III.    Parties**

6.      Plaintiff, Renee Mazer, is an adult individual and citizen of the Commonwealth of Pennsylvania currently residing at 1014 Signal Hill Lane, Berwyn, PA 19312.

7.      Defendant, Weber Gallagher Simpson Stapleton Fires & Newby LLP ("Law Firm"), is a law firm organized and operating pursuant to the laws of the Commonwealth of Pennsylvania. Plaintiff is asserting a professional liability claim against this Defendant.

8.      Defendant, Lynne Gold-Bikin, Esquire, is an adult individual and citizen believed of the Commonwealth of Pennsylvania, maintaining a principal place of business at 425 Swede Street - Suite 1001, Norristown, PA 19401. Defendant is a licensed attorney and, at the time of events described herein, an employee and partner of Law firm against whom Plaintiff is asserting a professional liability claim. Plaintiff is asserting a professional liability claim against this Defendant.

9.      Defendant, Christopher Bedali, Esquire, is an adult individual and citizen believed of the Commonwealth of Pennsylvania, maintaining a principal place of business at 425 Swede Street - Suite 1001, Norristown, PA 19401. Defendant is a licensed attorney and, at the time of events described herein, an employee and associate of Law firm against whom Plaintiff is asserting a

2

professional liability claim. Plaintiff is asserting a professional liability claim against this Defendant.

10. Defendant Interstate Credit & Collection ("ICC") is a corporation with principal offices at 215 W Fornance St, Norristown, PA. ICC regularly attempts to collect debts alleged to be due another and is a debt collector as defined by 15 U.S.C. §1692a(6) and/or allegedly bought the debt disputed herein when in default and therefore defendant is not excluded as a debt collector for purposes of the FDCPA under 15 U.S.C. §1692a(6)(F)(iii).

11. Defendant John Doe 1, whose dunning or legal name is David Rosenberg (hereinafter "Rosenberg") is a natural person employed by Defendant ICC as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

12. Defendants, John Does, 2-10, are adult individuals or entities affiliated with, associated with, doing business as, employed by, servants of or workers of Defendants, and have liability and responsibility hereunder. Defendants are a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known. Each of these parties are incorporated as Defendants in each and every Count and averment listed above and below.

**IV.   Operative Facts**

    A.   <u>Domestic Relations Proceedings</u>

        1. CUSTODY

13. On or about July, 2010, Plaintiff hired Defendant attorneys to defend a July 2009 complaint in divorce brought by her now ex-spouse, Frederic Fox ("Fox"), to retain full custody of their two (2) minor children and to obtain an accurate equitable distribution of property.

14. Prior to the custody proceedings discussed herein initiated by plaintiff's January 2010 petition for custody, plaintiff had de facto full custody of children given Fox's frequent business travels keeping him away from home for large portions of time.

15. In September, 2010, Dr. Anthony Pisa delivered a court ordered report of his custody evaluation of plaintiff's children ("Report").

16. In the Report, Dr. Pisa recommended primary custody in favor of Plaintiff.

17. Gold-Bikin arrived late to the Oct. 22, 2010 custody hearing and was visibly unprepared including lack of knowledge of the content of Dr. Pisa's report.

18. Gold-Bikin remained substantially silent during the hearing including failing to favorably reference the Report, which defendant had not read prior to the hearing, effectively rendering plaintiff without counsel at said custody hearing and without benefit of the Report.

19. Gold-Bikin refused Plaintiff's requests to bring Plaintiff's son, Zachary, to the Master's hearing to support plaintiff's claims of child abuse. Zachary's testimony would have defended plaintiff against Fox's claims of parental alienation directed at her.

20. As a result of Gold-Bikin's lack of preparation in her representation of plaintiff at the hearing, plaintiff lost primary custody of her twelve (12) year old autistic son Fletcher and the custody Master instead ordered shared custody of Fletcher with her abusive ex-spouse who lived in center city while Fletcher was forced to commute to his Chester County school.

21. After Fox was awarded shared custody, Fletcher experienced a drastic decline in his school performance and behavior - from having won a Rising Star Award award at school in June 2010 to suffering a near nervous breakdown and suicidal impulses by the end of 2010 and finally being suspended from school for violent ideation in March 2011.

22.     As a result of her separation, legal expenses, and relocation expenses, among many other financial difficulties, plaintiff could not afford to appeal the Master's custody finding to a full trial as was known to attorney defendants pre-hearing.

23.     In addition to the insuperable financial barrier to the aforesaid trial, plaintiff feared further adverse custody decisions (such as the risk of Fox gaining full custody and then deciding to board Fletcher to a school for autistic children wholly outside of a home environment) having already suffered a grievous loss by Gold-Bikin's insufficient representation.

24.     Plaintiff also learned at the hearing for the first time that Fox's attorney had made offers to Gold-Bikin to settle those custody issues on or about September 10, 2010 and Gold-Bikin had declined settlement without consulting or informing plaintiff.

      2. PROPERTY SETTLEMENT

25.     Plaintiff discovered at the April 2008 equitable distribution hearing regarding the date of separation issue that Gold-Bikin had filed a Complaint for Support attaching thereto a Chester County Domestic Relations intake document stating that the date of separation between plaintiff and her ex-spouse was March 30, 2008.

26.     Said document was improperly "verified" by Gold-Bikin, defendants having obtained and then affixed Plaintiff's unadorned form verification signed by plaintiff at the commencement of representation.

27.     The March 2008 date of separation proffered by Gold was plainly contradicted by a plethora of facts, *inter alia*, plaintiff's family was then living together; acting and holding themselves out to the world as a family; and also was contradicted by plaintiff's then fear of Fox taking custody of the children in the ultimate event of a separation.

28. Plaintiff and Fox did not separate until the fall of 2010 - cohabiting in the same residence until such date.

29. As further indicia of the false verification, the Complaint for Support attachment document contains the incorrect birth date for plaintiff's son, Fletcher, which plaintiff would have corrected had she actually been provided the document for review.

30. The signed verification was affixed by attorney defendants to the Complaint for Support without regard to accuracy or true verification of its averments by plaintiff.

31. Use of the inaccurate date of separation by attorney defendants caused plaintiff to lose rights to the acquisition, transfer, or appreciation in value of assets that would otherwise have been included in the marital estate. These assets would have included, but not limited to sale of Sun Life stock and gold between March 2008 and July 2009 and a share of other assets including corporate shares privately held by Fox.

### 3. TERMINATION OF REPRESENTATION

32. In 2010, plaintiff initiated support proceedings and a hearing was scheduled for November 5, 2010.

33. After plaintiff received notice of a scheduled November 5, 2010, custody hearing, Gold-Bikin advised plaintiff that she was not allowed to attend.

34. Uncomfortable with being told she could not attend, Plaintiff consulted with other domestic relations counsel to represent her.

35. As a result of her consultations with other counsel, on or about November 5, 2010, Plaintiff terminated in writing attorney Defendants' representation.

36. In response, Gold responded she would send plaintiff's case file as soon as plaintiff's new counsel appeared of record in the underlying case.

6

      B.     <u>Debt Collection</u>

37.    The disputed debt in question is a roughly $18,000 legal invoice from defendant law firm.

38.    Prior to the law firm referring the debt to ICC for collection, plaintiff had paid a substantial sum of money to the attorney Defendants.

39.    On or about August 3, 2011, ICC through defendant John Doe, Rosenberg, called plaintiff on her cell phone to collect the debt.

40.    When the aforesaid call was made by ICC, plaintiff was in a recording studio where she was working.

41.    During the aforesaid phone call, plaintiff advised that she had retained legal counsel to sue the law firm for professional negligence in their handling of the custody dispute over her child.

42.    Rosenberg firmly stated to plaintiff in response that the statute of limitations had passed to sue the attorney defendants regarding the custody dispute issue and that therefore she must pay the debt.

43.    Rosenberg further advised plaintiff that ICC was permitted to settle the debt for $9,000.00.

44.    Rosenberg further advised plaintiff that, if plaintiff did not accept the offer by the following Monday, ICC would sue plaintiff.

45.    ICC has not sued plaintiff.

46.    Plaintiff has suffered severe emotional distress, anxiety, and embarrassment as a result of defendants' conduct which continues in the form of harassing and abusive telephone calls to plaintiff.

47.    At all times relevant, defendant ICC acted by and through their agents, servants, and

employees, John Does 2-10, who acted within the scope of their authority and within the course of their employment.

**V.     Damages**

48.     As a result of all of the foregoing, Plaintiff's lost primary custody rights for her children and also received a significantly smaller portion of the available assets from Fox.

49.     As a further result of all of the foregoing, Plaintiff suffered great pain and agony, humiliation, embarrassment and emotional distress, and may continue to suffer same for an indefinite period of time, perhaps permanently.

**COUNT I**
**Professional Negligence/Malpractice**
*Plaintiff v. Gold, Bedali, and Law Firm*

50.     Plaintiff incorporates her prior allegations as if fully set forth at length herein.

51.     Defendants breached their duty of care to Plaintiff, acting negligently, carelessly, and recklessly, and in the following regards, respectively:

- a. Failing to be prepared and accurately and zealously advocate for plaintiff;

- b. Failing to prevent an improper order of custody revision by, including but not limited to, failure to bring and introduce testimony of necessary witnesses, including but not limited to plaintiff's son, Zachary;

- c. Failing to timely and properly communicate with Plaintiff (specifically, with regards to the custody issues and date of separation);

- d. Failing to timely and properly communicate accurate information to the Court including but not limited to the actual date of separation between plaintiff and her ex-spouse; and,

- e. Other careless, reckless, and negligent conduct which may be discovered during litigation and/or at trial.

52. As set forth above and at all times material, Defendants failed to possess and/or exercise the ordinary skill, knowledge and care normally possessed and exercised by members of good standing in the legal profession.

53. As a direct and proximate result of Defendants' negligence, carelessness and recklessness, Plaintiff suffered the above discussed damages, among others.

**COUNT II**
**Breach of Contract/Covenant of Good Faith and Fair Dealing**
*Plaintiff v. Gold, Bedali, and Law Firm*

54. Plaintiff incorporates by reference the paragraphs above as if set forth at length herein.

55. Plaintiff and Defendants entered into a contract for legal services (in the possession of Defendants).

56. Defendants' aforementioned conduct constitutes a breach (express, implied, or as a matter of law) of that agreement to provide competent and effective legal services, as well as a breach of the covenant of good faith and fair dealing.

57. As a direct and proximate cause of the aforesaid (incorporated by reference), Plaintiff has been damaged (as set forth above).

**COUNT III**
**Breach of Fiduciary Duty**
*Plaintiff v. Gold, Bedali, and Law Firm*

Plaintiff incorporates her prior allegations as if fully set forth at length herein.

58. Plaintiff and Defendants were in a fiduciary, attorney-client relationship.

59. Defendants' aforementioned conduct constitutes a breach of that fiduciary relationship.

60. As a direct and proximate cause of the aforementioned breach of fiduciary duty, Plaintiff has been damaged (as set forth above).

9

## COUNT IV - Violations of the FDCPA
*Plaintiff v. ICC and John Does 1-10*

61. Plaintiff incorporates her prior allegations as if fully set forth at length herein.

62. At all times relevant hereto Defendants were attempting to collect an alleged debt to it which was incurred for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

63. Defendants, by their conduct as described above, violated the FDCPA as follows:

 a) §1692d, Engaged in conduct the natural consequence of which is to harass, oppress, or abuse a person;

 b) §1692d(5), Engage a person in telephone conversations repeatedly;

 c) §1692e(5) Threatened to take an action that is not intended to be taken;

 d) §1692e(10) and e(2) used false representation or deceptive means to collect a debt and misled plaintiff as to the alleged legal status of the debt.

**VI.   Prayer For Relief**

**WHEREFORE,** Plaintiff requests this Honorable Court enter a judgment in his favor and against Defendants, individually, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00), plus such other and further relief as this Honorable Court deems necessary and just, and to order following relief:

 a. Statutory damages;
 b. Forfeiture of any proceeds or other monies paid to attorney Defendants by Plaintiff;
 c. Damages, including:
    i. compensatory;
    ii. punitive; and
    iii. attorney's fees and expenses, and cost of suit.

Dated: <u>February 21, 2012</u>                    <u>RC 935</u>
                                                    ROBERT P. COCCO, P.C.
                                                    By: Robert P. Cocco, Esquire
                                                    Pa. Id. No. 61907

                1500 Walnut Street, Suite 900
                Philadelphia, PA 19102
                (215) 351-0200

                <u>/s/ Matthew Weisberg</u>
                WEISBERG LAW, P.C.
                Matthew Weisberg, Esquire
                Pa. Id. No. 85570
                7 S. Morton Ave.
                Morton, PA 19070
                (610) 690-0801
                Attorneys for Plaintiff