| | |
|---|---|
| **KANE, PUGH, KNOELL, TROY & KRAMER LLP** | |
| BY: **PAUL C. TROY, ESQUIRE** | |
| ATTORNEY I.D. NO. 60875 | ATTORNEY FOR DEFENDANTS |
| 510 SWEDE STREET | Lynne Gold-Bikin, Christian Badali, |
| NORRISTOWN, PA 19401 | and Weber, Gallagher, Simpson, |
| (610) 275-2000 | Stapleton, Fires & Newby, LLP |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENEE MAZER | : | NO. 2:11-cv-06816-AB |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| LYNNE GOLD-BIKIN; CHRISTIAN | : | |
| BADALI; WEBER, GALLAGHER, SIMPSON, | : | |
| STAPLETON, FIRES & NEWBY, LLP; | : | |
| INTERSTATE CREDIT & COLLECTION; and | : | |
| JOHN DOES 1-10 | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MOVING DEFENDANTS LYNNE GOLD-BIKIN, ESQ., CHRISTIAN BADALI, ESQ., AND WEBER, GALLAGHER, SIMPSON, STAPLETON, FIRES, & NEWBY, LLP, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

I.   **STATEMENT OF FACTS**

Plaintiff filed this action in the United States District Court for the Eastern District of Pennsylvania as a legal malpractice and breach of contract and fiduciary duty case. This action arises out of custody and divorce proceeding in state court wherein Plaintiff failed to acquire primary physical and legal custody of the couple's two children. Plaintiff alleges that the state court awarded custody to Plaintiff's ex-spouse as the result of Defendant Gold-Bikin's negligence in handling the custody and divorce proceedings. Moreover, Plaintiff asserts that she was entitled to a significantly larger equitable distribution of marital assets than was awarded by the state court as the result of Defendant Gold-Bikin's allegedly negligent conduct.

Now Moving Defendants Lynne Gold-Bikin, Esquire, Christian Badali, Esquire, and Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP file this Memorandum of Law in support of their 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

## II. LEGAL ARGUMENT

### A. MOTION TO DISMISS ALL COUNTS AGAINST MOVING DEFENDANTS FOR FAILURE TO STATE A CLAIM

Pursuant to the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff's "failure to state a claim upon which relief can be granted," warrants either the dismissal of the entire complaint or the striking of meritless allegations. Fed. R. Civ. P. 12(b)(6).

In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United State Supreme Court clarifies the standard of review for a Rule 12(b)(6) motion. The Court expounds that dismissal of a complaint is appropriate if, accepting as true all of the facts alleged in the complaint, the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Detailed factual allegations are not necessary to survive a Rule 12(b)(6) motion, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." Id. at 555 (punctuation omitted). A properly pleaded complaint "raise[s] a right to relief above the speculative level." Id. A plaintiff must allege enough facts to create "plausible grounds to infer" that the claims can be proven and "to raise a reasonable expectation that discovery will reveal evidence" that supports the claims in the complaint. Id. at

566. When a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. at 570.

The Court elucidates the issue even further in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), by explaining that the Twombly "facial plausibility" pleading requirement applies to all civil suits in federal court. 129 S. Ct. at 1953. The Court establishes that the Rule 8(a)(2) pleading requirement "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 1949 (citations omitted). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Id. To avoid dismissal, all civil complaints must now set out "sufficient factual matter" to show that a claim is facially plausible. Id. at 1940. A properly pleaded complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In light of Twombly and Iqbal, the Third Circuit requires that District Courts conduct a two-part analysis for motions to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. at 211 (citation omitted). The Third Circuit also recognizes that "[s]ome claims require more factual explication than others to state a plausible claim for relief. For example, it generally takes fewer factual allegations to

state a claim for simple battery than to state a claim for antitrust conspiracy." W. Penn Allegheny Health Sys. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

Applying the above-stated standards, Moving Defendants' Motion to Dismiss should be granted in full and Plaintiff's Complaint should be dismissed. Alternatively, this Court should dismiss all the counts related to the custody dispute in Plaintiff's Complaint against Moving Defendants that fail to comply with the pleading requirements.

### i. CLAIMS ARISING OUT OF CUSTODY PROCEEDINGS

Plaintiff fails to plead any cause of action related to the loss of primary physical custody of her two children because of her inability to plead damages as a result of the custody proceeding. A claim for actual damages is a necessary element in pleading a cause of action for legal malpractice, for breach of contract, and for breach of fiduciary duty. In the history of Pennsylvania, there has never been a viable legal malpractice claim arising out of a custody dispute. The reasons for such a precedent are twofold. First, there is no actionable claim for loss of consortium between a parent and a child. While Plaintiff does not use the term "loss of consortium", her averment of "great pain and agony, humiliation, embarrassment and emotion distress" as a result of losing primary custody of her children essentially amounts to a loss of consortium claim. However, such a claim is not actionable in Pennsylvania. "Damages for loss of consortium are available only to spouses, and do not include a parent's loss of society and companionship of [her] child[ren]." Dep't of Pub. Welfare v. Shultz, 855 A.2d 753, 755 (Pa. 2004). Accordingly, to the extent a loss of consortium claim can be gleaned from Plaintiff's First Amended Complaint, the element of damages has not been sufficiently pled. Thus, the causes of action for legal malpractice, breach of contract and breach of fiduciary duty related to the loss of primary physical custody must be dismissed.

Second, a parent who does not obtain primary physical custody of her child(ren) does not suffer damages. Accordingly, one who does not or cannot not plead any actual damages as part of her claim for the such causes of action necessarily cannot survive a 12(b)(6) motion to dismiss. As the result of losing primary physical custody of her children, Plaintiff asserts damages for "great pain and agony, humiliation, embarrassment and emotion distress" that may continue permanently. It is well established that custody proceedings are ongoing and subject to modification until the child reaches the age of emancipation. Further, the custody determinations are based on an evaluation of the best interests of the child, not the parent. Thus, Plaintiff has not been harmed by the custody determination at issue. While it is clear that Plaintiff wishes she had primary physical custody of her two children, the court issued an order based on all relevant evidence that it was in the best interest of the children to be placed in the shared legal and physical care of both parents. It is understandable that Plaintiff is upset by the decision; however, such a claim is insufficient to establish that Plaintiff suffered injury or damages as a result of either Defendant Gold-Bikin's alleged negligence or the state court's custody determination. Furthermore, the First Amended Complaint states that Plaintiff enjoyed *de facto* primary physical custody only as a result of her ex-spouse's frequent business travel. Such an arrangement was not based on a determination by the court that was subsequently reversed due to Gold-Bikin's action or inaction. Rather, no official custody arrangement had been determined at that point and, therefore, nothing was necessarily taken away from Plaintiff and she has suffered no damages accordingly. Courts today frequently grant shared custody to parents in situations where both parents are willing and able to care for the child(ren); in fact, recent trends indicate that shared custody is the preferred custodial arrangement in Pennsylvania when in the best interests of the child. See M.A.T. v. G.S.T., 989 A.2d 11 (Pa. Super. Ct. 2010); Johnson v.

Lewis, 870 A.2d 368 (Pa. Super. Ct. 2005); It is often viewed as being in the best interests of the child to have the benefit of both parents in their lives. The antiquated "tender years" doctrine and the presumption that mothers should have primary custody that once guided custody determinations are now giving way to an approach that places more value on a shared custody arrangement where possible. Id. at 18 (citing In re Custody of Temos, 450 A.2d 111, 121 (Pa. Super. Ct. 1982)). Therefore, Plaintiff basis her whole argument on grounds that likely had no bearing in the custody master's award of shared physical custody over as the court considered the best interests of the child in making the custody determination.

Even if this court determines that Plaintiff has suffered harm as the result of any action or inaction on behalf of Defendant Gold-Bikin, Plaintiff is at liberty to seek modification of the custody order at any time. This is because of the ongoing nature of custody proceedings as described above. Any alleged damages caused by Plaintiff's inability due to lack financial resources to challenge the custody master's decision cannot be attributed to Gold-Bikin. Further, one might expect Plaintiff would have expended additional resources to fight any appeal from her ex-spouse had the custody master awarded custody in her favor. Based on the manner in which the Complaint has been pled, it does not appear that Plaintiff has requested any such modification of the custody order. Therefore, by asserting the aforementioned speculative damages, Plaintiff fails to sufficiently plead the element of actual damages necessary to state a cause of action for legal malpractice, breach of contract, and fiduciary duty. As arising out of the custody proceedings, Counts One, Two, and Three against Moving Defendants must be dismissed for failure to state a claim.

### ii. **CLAIMS ARISING OUT OF EQUITABLE DISTRIBUTION**

Counts One, Two, and Three arising out of Plaintiff's divorce and equitable distribution claims must be dismissed because such causes of action are not ripe for judicial determination. Article III, section 2 of the United States Constitution "limits federal jurisdiction to actual 'cases' and 'controversies.'" Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir. 1992). The doctrine of ripeness, which "determines when a proper party may bring an action," has evolved from the case or controversy requirement. Id. at 411. Thus, ripeness is a threshold issue implicating subject matter jurisdiction. The issue of ripeness focuses on when the action may be brought. The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). Specifically, it concerns whether, at the time the lawsuit is commenced, the facts have developed sufficiently such that an injury has occurred or is likely to occur, rather than being contingent or remote. In Abbott Labs, the Supreme Court developed a two-part test for determining whether a case is ripe for adjudication: courts must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149.

However, these claims lack the ripeness required by Article III, Section 2 of the Constitution and fails to satisfy the first prong of the test put forth by the Supreme Court in Abbott Labs. The issues presented by Plaintiff are not fit for judicial decision because there is no final order concerning equitable distribution in the divorce proceedings. A search of the Chester County docket, No. 2009-08208-DI, reveals that the divorce and equitable distribution proceedings are ongoing. See Exhibit B. The final docket entry was dated February 17, 2012, indicating that a settlement conference memorandum was filed by Frederick Fox, Plaintiff's ex-

spouse. Id. A settlement conference was scheduled for that same afternoon in front of Judge Ann Marie M. Wheatcraft. As of March 6, 2012, no order has been entered regarding the outcome of the settlement conference nor has there been any indication that the divorce proceedings have been settled, discontinued, or ended on any basis. Id.

Even if the divorce proceedings have now been settled or ended more than 14 months after Defendants ceased their representation of Plaintiff, the claims must be dismissed for failure to state a claim upon which relief may be granted, as discussed in the following sections.

### a. MOTION TO DISMISS COUNT ONE OF PLAINTIFF'S COMPLAINT: PROFESSIONAL NEGLIGENCE/LEGAL MALPRACTICE

In Count One, Plaintiff alleges a cause of action for legal malpractice against Moving Defendants. See Exhibit A. To establish a cause of action for legal malpractice, a plaintiff must allege: 1) employment of the attorney or other basis for a duty, 2) the failure of the attorney to exercise ordinary skill and knowledge, 3) that the attorney's negligence was the proximate cause of the damage to the plaintiff, and 4) damages to the plaintiff. Rizzo v. Haines, 520 Pa. 484, 555 A.2d 58 (1985).

However, in paragraph 51 of the Complaint, Plaintiff avers that,

Defendants breached their duty of care to Plaintiff, acting negligently, carelessly, and recklessly, and in the following regards, respectively:
(a) Failing to provide be prepared and accurately and zealously advocate for Plaintiff;
(b) Failing to prevent an improper order of custody revision by, including but not limited to, failure to bring and introduce testimony of necessary witnesses, including but not limited to plaintiff's son, Zachary;
(c) Failing to timely and properly communicate with Plaintiff (specifically, with regards to the custody issues and date of separation;
(d) Failing to timely and properly communicate accurate information to the Court including but not limited to the actual date of separation between Plaintiff and her ex-spouse; and
(e) Other careless, reckless, and negligent conduct which may be discovered during litigation and/or at trial.

See Exhibit A. Plaintiff fails to plead the required elements of breach of duty, proximate cause and loss or damages. In subsections (a) and (b), Plaintiff makes allegations regarding strategic judgments and decisions on behalf of Defendant Gold-Bikin. However, "an informed judgment on the part of counsel, even if subsequently proven erroneous, is not negligence." Composition Roofers Local 30/30B v. Katz, 581 A.2d 607, 609-610 (Pa. Super. Ct. 1990). "An attorney at law is not liable to his client for a failure to succeed, resulting in loss to the client, unless this is due to his mismanagement of the business entrusted to him through bad faith, inattention, or want of professional skill. . . ." Enterline v. Miller, 27 Pa.Super. 463, 467 (1905). Furthermore, an attorney is "entitled to rely in good faith upon the statement of facts made to him by their client, and is not under a duty to institute an inquiry for the purpose of verifying such statements before giving advice thereon." Meiskin v. Howard Hanna Co. Inc., 590 A.2d 1303, 1306 (Pa. Super. Ct. 1991); Kit v. Mitchell, 771 A.2d 814, 822 (Pa. Super Ct. 2001).

Plaintiff further fails to plead that Moving Defendants were the proximate cause of any alleged damages. As the basis for Plaintiff's argument, she alleges that Gold-Bikin's submission of an inaccurate date of separation between Plaintiff and her ex-spouse was the proximate cause of Plaintiff's damages in the form of a significantly less equitable distribution of the marital and non-marital assets from the divorce proceeding. However, the Chester County docket indicates that the divorce and equitable distribution proceedings continued for more than 14 months after Plaintiff dismissed Gold-Bikin as her counsel. See Exhibit B. During that time, Plaintiff's new counsel, Marta Laynas, and Plaintiff's ex-spouse each submitted with the court a pre-trial statement with regard to the date of separation hearing. Therefore, it is reasonable to conclude that there was a hearing held on precisely the matter of the date of separation. Plaintiff thus had an opportunity to rectify the submission of any inaccurate date of separation prior to any court

ruling on the matter. Id. These documents were entered on the docket on April 1 and April 17, 2011. The settlement conference in the divorce proceeding was not scheduled for more than a year after Plaintiff had the opportunity to submit an accurate date of separation to the Chester County courts. Thus, it is inconceivable that the date of separation submitted by Gold-Bikin, even if inaccurate, had any bearing on the equitable distribution, if any has been determined to this point, or that Gold-Bikin was the proximate cause of the alleged damages caused by Plaintiff in this matter.

Moreover, Plaintiff states that she "discovered at the April 2008 equitable distribution hearing regarding the date of separation issue that Gold-Bikin had filed a Complaint for Support" containing an inaccurate date of separation. See Exhibit A at ¶ 25. Plaintiff did not retain Gold-Bikin as her counsel until July 2010. Thus, Gold-Bikin had nothing to do with Plaintiff's divorce proceedings until hired in July 2010 and cannot be the proximate cause of any damages sustained prior to the commencement of her representation. Looking at the Chester County docket, it is possible that Plaintiff meant 2011 instead of 2008. To the extent that Plaintiff is referring to the equitable distribution hearing held in April of 2011, the hearing was the time and place to correct any inaccuracies on the record. Plaintiff further asserts that Gold-Bikin should have known that the March 2008 date was inaccurate because the family was "living together" and "holding themselves out…as a family" and was "contradicted by Plaintiff's then fear of Fox taking custody of the children in the ultimate event of a separation." See Exhibit A at ¶27. However, any information submitted to the Chester County courts by Gold-Bikin was based on information obtained by Gold-Bikin in meetings with Plaintiff throughout the four-month course of representation. An attorney is permitted to, in good faith, rely on the representations made by their clients. This is precisely what Gold-Bikin did. She is not obligated under her duty of

zealous advocacy to conduct an independent investigation of Plaintiff's marital and home life in order to determine the veracity of her statements.

Plaintiff additionally fails to state a claim for actual damages. Actual damages are a necessary element in causes of action for legal malpractice, breach of contract, and breach of fiduciary duty. In the First Amended Complaint, Plaintiff claims the following damages related to the divorce proceeding in the form of legal fees paid to Moving Defendants, a loss of marital and non-marital assets in the underlying divorce proceeding, and "great pain and agony, humiliation, embarrassment, and emotional distress" continuing for an indefinite period of time, perhaps permanently. See Exhibit A, ¶ 45. Damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages. Hackett v. Greyhound Lines, Inc., 2009 U.S. Dist. LEXIS 48900 (E.D. Pa. 2009) (citing Myers v. Robert Lewis Seigle, P.C., 2000 PA Super 136, 751 A.2d 1182, 1184 (Pa. Super. Ct. 2000), appeal denied, 568 Pa. 665, 795 A.2d 978 (Pa. 2000).

In the First Amended Complaint, Plaintiff merely speculates as to what the state court could possibly have awarded based on proper knowledge of the date of legal separation of Plaintiff and her ex-spouse. Plaintiff had the opportunity and the ability to inform the court herself and/or through her new counsel that the recorded date of separation was inaccurate. Furthermore, it is unclear at this point in time whether the divorce and equitable distribution proceedings have been settled and/or ended or whether the proceedings are ongoing. If Plaintiff is at any time dissatisfied with the result obtained by her new counsel, she has the right to appeal such decision. However, based on the pleadings, she has yet to file the appropriate motion to reconsider or to appeal any equitable distribution decision. Such failure on behalf of Plaintiff

and her new counsel cannot be attributed to Moving Defendants as they had not represented Plaintiff for more than 14 months. In such time, Plaintiff has used the services of both Marta Laynas and, subsequently, Mark David Rassman. Indeed, through the course of these divorce proceedings, Plaintiff has engaged the legal services of no less than six attorneys, as indicated on the Chester County docket. See Exhibit B. It appears that there is a pattern whereby none of the attorneys engaged by Plaintiff are willing and/or capable of providing the quality of representation required by Plaintiff or, on the other hand, that she becomes too much of a burden on the practice of these attorneys and they withdraw their services accordingly. Either way, the damages claimed from the divorce and equitable distribution proceedings remain purely speculative and, thus, cannot form the basis of a well-pleaded claim for legal malpractice.

Alternatively, the claim for legal malpractice should be barred by Pennsylvania's "Gist of the Action" doctrine. Although the Pennsylvania Supreme Court has not yet explicitly recognized the doctrine, the "Third Circuit has predicted that the state supreme court would adopt the 'Gist of the Action' doctrine as set out by Pennsylvania's Superior Court." Tri County Realty Inc., v. Lunaire Limited, 2006 U.S. Dist. LEXIS 86829 (M.D. Pa. 2006), citing Williams v. Hilton Group PLC, 93 Fed. Appx. 384, 385 (3d Cir. 2005). The doctrine is designed to maintain a distinction between breach of contract claims and tort claims by barring plaintiffs from recasting breach of contract claims as tort claims. Id. at *6, citing eToll Inc. v. Elias/Savion Adver., Inc., 2002 PA Super 347, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)(citations omitted). The "critical question is whether the tort claims are 'inextricably intertwined' with the contract claims or whether the tort claims are 'tangential' to the contract." Id. The doctrine cannot "be evaded by merely pleading that the defendant acted negligently, recklessly, or intentionally if the gravamen of the claim is that the defendant failed to perform a promise." Id. at 7, citing Sunquest

Information Systems, Inc. v. dean Witter Reynolds, Inc., 40 F.Supp.2d 644, 651 (W.D. Pa. 1999).

Plaintiff's claim for legal malpractice is merely another way of asserting a claim for breach of contract. The cause of action for legal malpractice is "inextricably intertwined" with the claim in contract because both are based on the exact same facts and pleadings that Plaintiff used to plead breach of contract. The gravamen of Plaintiff's claim is that Defendant Gold-Bikin failed to adhere to professional standards of care while handling Plaintiff's case. This is the essential allegation of both the tort and contract claims. Thus, the "gist of the action" of both the claim for legal malpractice and breach of contract are the same; Plaintiff's claim for legal malpractice should be barred by the "Gist of the Action" doctrine.

Therefore, Count One should be dismissed from Plaintiff's First Amended Complaint because Plaintiff fails to plead the required elements of proximate cause and damages in order to establish a cause of action for legal malpractice against Moving Defendants and fails to state a claim upon which relief may be granted. Alternatively, Count One must be dismissed under the "Gist of the Action" doctrine, barring a claim for breach of contract being recast as a tort claim.

### b. MOTION TO DISMISS COUNT TWO OF PLAINTIFF'S COMPLAINT: BREACH OF CONTRACT/COVENANT OF GOOD FAITH AND FAIR DEALING

In Count Two, Plaintiff asserts a claim for breach of contract and the covenant of good faith and fair dealing. Under Pennsylvania law, "an action for legal malpractice may be brought in *either* contract or tort." Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 571 (Pa. Super. 2007)(emphasis added). However, "to support a claim for breach of contract, a plaintiff must allege: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed

by the contract; and 3) resultant damage." Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. 2003) (citation omitted) (emphasis added).

"[T]here is an implied term in contracts for legal services to perform the service in a manner consistent with the profession at large. *The specific service is not implied*, only the quality." CBC Innovis, Inc. v. Federman & Phelan, LLP, 2009 Phila. Ct. Com. Pl. LEXIS *50, 5-6* (Pa. C.P. 2009) (*emphasis added*). "When an attorney enters into an express contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those services in a manner that comports with the profession at large." CBC Innovis, Inc., 2009 Phila. Ct. Com. Pl. LEXIS 50 at *5-6, citing Wachovia Bank, NA., 935 A.2d at 570-71. See also Gorski v. Smith, 2002 PA Super 334, 812 A.2d 683, 694 (Pa. Super. Ct. 2002). "All that is implied is the obligation to provide the agreed upon services in a manner consistent with the profession at large." Id. (emphasis added).

Plaintiff complains of Defendant Gold-Bikin's strategic judgments and decisions in preparing for and participating in court hearings. However, the law does not permit a disgruntled client to bring a breach of contract claim against an attorney for failure or refusal to take specific action unless specified by the contract itself. Plaintiff thus fails to state a true cause of action in contract.

Plaintiff also fails to state a claim for actual damages necessary to establish a cause of action for breach of contract. As stated in subsection (a), damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages. Hackett v. Greyhound Lines, Inc., 2009 U.S. Dist. LEXIS 48900 at *5 (E.D. Pa. June 11, 2009). The damages asserted by Plaintiff with regard to the equitable distribution are purely speculative.

Plaintiff does not plead how the submission of a different date of legal separation would have altered her share of the equitable distribution decided by the state court. Furthermore, it is unclear at this point in time whether the divorce and equitable distribution proceedings have been settled and/or ended or whether the proceedings are ongoing. If Plaintiff is at any time dissatisfied with the result obtained by her new counsel, she has the right to appeal such decision. Thus, Plaintiff's claim for breach of contract must fail as she cannot successfully plead the element of damages.

Alternatively, if this Honorable Court deems the pleadings sufficient to establish the element of damages, the damages must be limited to the amount that Plaintiff actually paid for legal services. Several courts have established that the recoverable damages in a breach of contract action must be limited to the amount actually paid for legal services. Bailey v. Tucker, 621 A.2d 108, 115 (Pa. 1993). See also Telesford v. Sturm, 2004 U.S. Dist. LEXIS 24191 (D. Pa. 2004) (holding the amount of recoverable damages brought under the assumpsit theory in criminal legal malpractice actions is limited to the amount actually paid for the legal services plus statutory interest); Coleman v. Duane Morris, LLP, No.0917 (C.P. Phila.Co. 2011) (on appeal, Superior Court No.1659 EDA 2011) (a contract claim is limited to the amount actually paid for legal services, and that this rule applies to civil actions); Slaughter v. Rushing, 682 A.2d 1234 (1996) (noting that damage for an action in assumpsit are limited to the amount actually paid for the attorney's services plus statutory interest); McClanaghan v. McGreal, 1993 U.S. Dist. LEXIS 14724, pg. 6-7 (citing Bailey, limiting damages to the amount actually paid for legal services for the drafting of decedent's Last Will and Testament, plus statutory interest). While Coleman is not precedential, it certainly demonstrates that the trend in Pennsylvania is to limit recoverable damages in civil cases as well as criminal. It is critical to note that Bailey, Coleman,

and <u>McClanaghan</u> are all civil cases. Thus, under the contract claim, any claim for damages exceeding the amount Plaintiff actually paid for legal services to Moving Defendants must be stricken from the First Amended Complaint.

Therefore, Count Two must be dismissed from Plaintiff's First Amended Complaint because Plaintiff does not plead the required elements of a cause of action for breach of contract and covenant of good faith and fair dealing against Moving Defendants and, therefore, fails to state a claim upon which relief may be granted. In the alternative, the damages under the breach of contract claim must be limited to the amount Plaintiff actually paid for legal services to Moving Defendants.

### c. MOTION TO DISMISS COUNT THREE OF PLAINTIFF'S COMPLAINT: BREACH OF FIDUCIARY DUTY

In Count Three, Plaintiff asserts a claim for breach of fiduciary duty. The elements a plaintiff must prove in a claim of breach of fiduciary duty are: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bringing about plaintiff's injuries." <u>McDermott v. Party City Corp.</u>, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998).

Plaintiff has suffered no actual injury as a result of any alleged equitable distribution in the divorce proceeding. As previously discussed, it is unclear at this point in time whether the divorce and equitable distribution proceedings have been settled and/or ended or whether the proceedings are ongoing. If Plaintiff is at any time dissatisfied with the result obtained by her new counsel, she has the right to appeal such decision. As pled in the First Amended Complaint, Plaintiff's claim that she received a lesser distribution of marital and non-marital assets than she believes she was entitled is insufficient to establish that Plaintiff suffered injury as a result of

either Defendant Gold-Bikin's alleged negligence or the state court's equitable distribution determination. Plaintiff had ample opportunity to advise the court of the correct date of separation. Plaintiff fails to plead more than conclusory and/or speculative averments that Defendant Gold-Bikin's allegedly negligent conduct was a "real factor" in bringing about Plaintiff's alleged injury. Therefore, Gold-Bikin cannot possibly be the proximate cause of Plaintiff's alleged damages.

Therefore, Count Three must be dismissed from Plaintiff's First Amended Complaint because Plaintiff does not plead the required elements of a cause of action for breach of fiduciary duty against Moving Defendants and, therefore, fails to state a claim upon which relief may be granted.

### B. MOTION TO STRIKE CLAIM FOR ATTORNEYS FEES

In Section VI of the First Amended Complaint entitled "Prayer for Relief," Plaintiff seeks costs and fees in this action. See Exhibit A. In Pennsylvania, the general rule is that attorney's fees are recoverable from an adverse party only when they are 1) authorized by statute, 2) by contract or agreement between the parties, or 3) other recognized exception. Chatham Communications, Inc. v. General Press Corp., 344 A.2d 837, 842 (Pa 1975); see also, J.C. Snavely & Sons v. Web M & E, 594 A.2d 333, 337 (Pa. 1991). However, Plaintiff has not cited any statutory violations for which attorney fees are recoverable or any clearly written agreement entered into between the parties for the payment of attorney's fees.

Therefore, Moving Defendants respectfully request that this Honorable Court strike Plaintiff's claims for attorney's fees from the First Amended Complaint.

### C. MOTION TO STRIKE CLAIM FOR PUNITIVE DAMAGES

In Section VI(c) of the Complaint, Plaintiff seeks the imposition of punitive damages. In Pennsylvania, punitive damages are appropriate only where the defendant's conduct was of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct. SHV Coal v. Continental Grain Co., 587 A.2d 702, 704 (Pa. 1991). Neither mere negligence, nor even gross negligence, shows sufficient culpability to justify a punitive damage award. Id. In order for punitive damages to be applicable, "[t]he act, or the failure to act, must be intentional, reckless or malicious." Feld v. Merriam, 485 A.2d 742, 748 (Pa. 1984). Punitive damages may not be awarded for misconduct that constitutes ordinary negligence such as inadvertence, mistake and errors of judgment. Martin v. Johns-Manville Corp., 494 A.2d 1088, 1097 (Pa. 1985); McDaniel v. Merck, Sharp & Dohme, 533 A.2d 436, 437 (Pa. Super. Ct. 1987), allocator denied, 551 A.2d 215 (1988). Absent appropriate allegations of outrageous conduct, punitive damages cannot be imposed against Moving Defendants. Plaintiff has failed to allege any facts that even remotely suggest intentional, reckless, or malicious conduct on the part of Moving Defendants.

Therefore, Moving Defendants respectfully request that this Honorable Court strike the language of punitive damages, including allegations of recklessness, from Plaintiff's First Amended Complaint.

### D.   MOTION TO STRIKE CLAIM FOR JOINT AND SEVERAL LIABILITY

Plaintiff demands damages in ¶ 2 of the Complaint and again in Section VI against all of the Defendants, "jointly and severally." See Exhibit A. However, all Defendants are not jointly and severally liable in this action. In the Uniform Contribution Among Tort-feasors Act, or 42 Pa. C.S. § 832 *et seq.*, joint tort-feasors means "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered

against all or some of them." Foulke v. Dugan, 212 F.R.D. 265 (E.D. Pa. 2002). In the instant case, Plaintiff asserts various state tort claims against Moving Defendants while simultaneously asserting a claim under federal law for a violation of the Fair Debt Collection Practices Act ("FDCPA") against Defendant Interstate Credit & Collection ("ICC"). While the alleged injuries to Plaintiff arise out of the same facts of the custody and divorce proceedings, the causes of action and the injuries are distinctly different. Because Plaintiff has alleged separate and distinct causes of action with separate and distinct remedies against Moving Defendants and the ICC Defendants, Moving Defendants are not jointly or severally liable in tort for the same alleged injury to Plaintiff. Furthermore, Moving Defendants and ICC are not joint tort-feasors under the Act because the injuries stemming from each distinct claim are different. See Mamalis v. Atlas Van Lines, Inc., 528 A.2d 198, 199 (Pa. 1987).

Therefore, Moving Defendants respectfully request from this Honorable Court that the language of "jointly and severally" should be stricken from ¶ 2 and Section VI of the First Amended Complaint.

### III. CONCLUSION

Based on the foregoing discussion and the case law cited therein, Moving Defendants respectfully request that this Honorable Court grant their Motion to Dismiss the First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, and enter the attached Order. Alternatively, Moving Defendants respectfully

request that this Honorable Court strike Plaintiff's request for attorney's fees, punitive damages, and joint and several liability.

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**


BY: /s/ Paul C. Troy
PAUL C. TROY, ESQUIRE
Attorney for Moving Defendants
Lynne Gold-Bikin, Esquire,
Christian Badali, Esquire, and
Weber, Gallagher, Simpson,
Stapleton, Fires, & Newby, LLP